UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| TIMMIE E. BROWN, § | |
| § | |
| Plaintiff, § | |
| v. § | CIVIL ACTION NO. H-07-1289 |
| § | |
| MICHAEL J. ASTRUE, *et al.*, § | |
| § | |
| Defendants. § | |

## MEMORANDUM AND ORDER

Pending before the Court are Plaintiff and Defendant's Cross-Motions for Summary Judgment. For the following reasons, Defendant's Motion, Docket No. 9, is **DENIED** and Plaintiff's Motion, Docket No. 11, is **GRANTED**. This case is **REMANDED** to the ALJ for action not inconsistent with this order.

### I.  BACKGROUND

On January 30, 2004, Mr. Brown filed an application for Social Security disability benefits alleging that he became disabled on February 14, 2000 due to status post left knee arthoscopic surgery, osteoarthritis of the knees, and Huntington's Disease. Huntington's Disease is characterized by chronic progressive chorea and mental deterioration terminating in dementia. Chorea refers to brief involuntary movements of the extremities and face. THE MERCK MANUAL 1464 (17th ed. 1999). Until 2000, Plaintiff worked for Southwestern Bell installing and repairing telephone service. (Tr. 89, 183.)

Mr. Brown's application was denied initially and on reconsideration. Mr. Brown requested a hearing, which was set for April 13, 2006. Mr. Brown failed to attend the hearing, and his case was dismissed on April 28, 2006. Mr. Brown requested review of the dismissal, and the Appeals Council found that there was no evidence that Mr. Brown had received notice of the

April hearing. The Appeals Council remanded the case for consideration by the Administrative Law Judge (ALJ) on June 26, 2006.

The ALJ conducted a hearing on November 2, 2006. Mr. Brown appeared pro se. Mr. Brown testified at the hearing as did Vocational Expert (VE) Lorie McQuade. The ALJ denied Mr. Brown's application for benefits on December 2, 2006. In his denial of benefits determination, the ALJ found Mr. Brown had not engaged in substantial gainful activity since February 14, 2000, (Tr. 19), and that Mr. Brown had severe impairments of status post left knee arthoscopic surgery, osteoarthritis of the knees, obesity, and Huntington's disease. (Tr. 20.) The ALJ further held that Mr. Brown's impairments did not meet or medically equal the severity in any listing. (Tr. 21-22.) The ALJ determined Mr. Brown's residual functional capacity, and found that he could not perform medium, heavy, or very heavy work. He found that Mr. Brown retained the capacity to lift or carry twenty pounds occasionally and/or ten pounds frequently, to stand and/or walk about six hours in an eight-hour workday, and sit at least two hours in an eight-hour workday. (Tr. 22.) He also noted that Mr. Brown was further limited from unprotected heights, unstable surfaces, climbing on or about moving or hazardous machinery or equipment and that he needed to alternate sitting and standing at will during the workday and needed to work indoors in a climate-controlled environment. (Tr. 22.) Although the ALJ determined that Mr. Brown could no longer perform his past relevant work as a result of these limitations, he concluded that Mr. Brown's impairments did not prevent him from engaging in work that existed in significant numbers in the national economy based on testimony by the VE. (Tr. 26-27.) The Appeals Council denied review of the ALJ's decision on February 21, 2007.

## II.   ANALYSIS

### A.   Summary Judgment Standard

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. FED. R. CIV. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The Court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Id.*

**B.    Standard of Review**

Judicial review of an ALJ's denial of disability benefits is limited to determining "whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). "It must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Id.* (internal quotation marks omitted) (citing *Hemphill v. Weinberger*, 483 F.2d 1137 (5th Cir. 1973); *Payne v. Weinberger*, 480 F.2d 1006 (5th Cir. 1973)).

**C.    Legal Standard**

A disability claimant bears the initial burden of proving that she is disabled. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."). A person claiming a disability must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore, "[a] claimant is eligible for benefits only if the onset of the qualifying medical impairment began on or before the date the claimant was last insured." *Ivy v. Sullivan*, 898 F.2d 1045, 1048 (5th Cir. 1990). In the instant case, Plaintiff bears the burden of demonstrating that a qualifying medical impairment began on or before December 31, 2005.

The Court evaluates a disability claim via a five-step process, as follows:

> (1) a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe impairment"; (3) a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that he has done in the past must be found "not disabled"; and (5) if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work.

*Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (citing *Villa*, 895 F.2d at 1022).

### D.  Mr. Brown's Claim

Mr. Brown contends that his waiver of the right to counsel was ineffective and that he was prejudiced by this error. Mr. Brown maintains that he could and would have produced additional medical evidence had he been represented by council and that lack of counsel deprived him of a full and fair hearing.

1.  **Waiver of Right to Counsel**

    a) **Mr. Brown's waiver of his right to counsel was not effective**

Based on the administrative record, the Court cannot find that Mr. Brown's waiver of his right to counsel was effective. The Fifth Circuit has recognized that a claimant has a statutory right to counsel at a Social Security Hearing. *See Clark v. Schweiker*, 652 F.2d 399, 403 (5th Cir. 1981) (citing 42 U.S.C. § 406). In order for this right to be effective, the Secretary must notify the claimant of his right to be represented before the ALJ. *Id.*; *see also Castillo v. Barnhart*. 325 F.3d 550, 552 (5th Cir. 2003); *Gullett v. Chater*, 973 F. Supp. 614, 620 (E.D. Tex. 1997). A claimant must be provided sufficient information that would allow him to decide intelligently whether to retain counsel or proceed pro se. *Id.* at 403-04. Such notice should provide information regarding the type of assistance an attorney could provide during the hearing, sources of free counsel and the possibility of contingency arrangements, and the fact that attorneys fees are limited to twenty-five percent of past-due benefits. *Clark*, 652 F.2d at 403; *Castillo*, 325 F.3d at 552 n.4, *Thompson v. Sullivan*, 933 F.2d 581, 584 (7th Cir. 1991); *Freeman-Park v. Barnhart*, 435 F. Supp. 597, 601 (E.D. Tex. 2006) (citing *Gullett*, 973 F. Supp. at 620). A notice of the claimant's right to counsel that conveys a tone "intended to discourage a claimant from obtaining the aid of counsel" does not constitute adequate notice of that right. *Clark*, 652 F.2d at 403; *see also Bunton v. Shalala*, No. 93-8746, 1994 WL 499637, at *2 (5th Cir. Aug. 22, 1994) (noting that there was nothing to show that Plaintiff "was misled" by his pre-hearing notice of right to counsel). It is not entirely clear whether written notice alone may provide sufficient notice of the right to counsel. Although the Fifth Circuit has not held explicitly that notice must be given at a hearing, it has stated that "[p]re-hearing written notification alone may be inadequate." *Stansel v. Shalala*, 41 F.3d 664 (5th Cir. 1994) (citing

5

*Benson v. Schweiker*, 652 F.2d 406, 408 (5th Cir.1981); *see also Gullett*, 973 F. Supp. at 621 (noting that an "ALJ should . . . provide oral notification at the hearing to ensure[ ] that a claimant who appears pro se . . . has been made aware of the options for obtaining counsel so that her or his waiver is knowingly and intelligently effected." (internal citation and quotation marks omitted)). Those Fifth Circuit cases discussing written notices of the right to counsel also make mention of an ALJ's reminder of the right at the hearing. *See, e.g., Castillo*, 325 F.3d at 552; *Norden v. Barnhart*, 77 Fed. Appx. 221, 223 (5th Cir. 2003) (unpublished).

Mr. Brown did receive written notices discussing his right to counsel. First, in his April 2004 initial denial of benefits letter and in the July 2004 reconsideration letter, Mr. Brown was notified that there are groups that may provide free legal services, that lawyers that may work on contingency, and of the 25 percent limit on fees. (Tr. 38, 43.) These letters did not discuss the type of assistance an attorney might provide. Second, a September 13, 2004 letter acknowledging Mr. Brown's first request for a hearing included similar information and provided additional information regarding the assistance an attorney might provide. (Tr. 49-50.) This letter included an attachment, however, stating "IF YOU WANT TO OBTAIN A PRIVATE ATTORNEY to represent you but you have been unable to find one, a private attorney may be obtained by contacting one of the organizations below." (Tr. 51.) The rest of the page is blank. Likewise, a second attachment to the letter states "IF YOU ARE UNABLE TO PAY FOR LEGAL REPRESENTATION, and you believe you might qualify for free legal representation, you should contact one of the following organizations." (Tr. 51.) Again, no organization is listed. Finally, the March 22, 2006 notice advising Mr. Brown of his second

hearing included cursory, general mention of the right to representation, but did not include any of the information required by the Fifth Circuit.[1] (Tr. 55.)

There was no notice whatsoever of a right to representation in the September 25, 2006 notice advising Mr. Brown of his second hearing date. Nor is there any indication that Mr. Brown signed a written waiver of right to attorney prior to the hearing. (*See* Pl.'s Resp. Ex. 1.) Mr. Brown did discuss representation with the ALJ off the record before the November 2006 hearing began. After going on the record, the following exchange occurred:

> ALJ: Now, before we start, I did have a conversation with you about representation. This is an appeals case, an appellate case that came back from the Appeals Division. He did have an attorney, Al Samp of the National Corporation was representing him. They have withdrawn and I questioned him about that this morning and he said he wanted to go ahead and represent himself. Is that correct?
>
> Mr. Brown: Yes.

(Tr. 180). At the end of the hearing, Mr. Brown also had the following discussion with the ALJ:

> Mr. Brown: I didn't know that (inaudible) withdrew.
>
> ALJ: Uh-huh.
>
> Mr. Brown: Why -- do you know why?
>
> ALJ: No, I don't, no I don't I really don't.
>
> Mr. Brown: I had no idea.
>
> ALJ: Yeah. Maybe you didn't contact them or something? Or work with them? Were you talking to them?
>
> Mr. Brown: Well, I have been doing the appeals through the Social Security Administration in Angleton but we had been trying to do the appeal thing . . .

---

[1] The March 22, 2006 notice simply stated:
> You may choose to have a person represent you. If you want to have a representative, please get one right away. You should show this notice to anyone you may appoint. You or that person should also call this office to give us his or her name, address, and telephone number.

(Tr. 55.)

7

ALJ: Uh-huh.

Mr. Brown: And I, I wasn't supposed to call, I didn't think so. I hadn't heard from them since the first time I appealed.

ALJ: Yeah I – that – I don't know. I guess because you didn't have contact with them, I guess they just pulled back. I guess.

Mr. Brown: I just have no idea.

(Tr. 190-91.)

The Court does not believe that Mr. Brown received sufficient notice of his right to counsel based on this record; his waiver of that right was therefore not effective. The 2004 notices did not explain the assistance an attorney could provide. There is some doubt as to whether Mr. Brown even received the September 2004 or March 2006 notices. Mr. Brown did not appear at his first hearing, and the Appeals Council observed that "there is no indication that there was evidence before the [ALJ] establishing that the notice of the hearing was actually received." (Tr. 61-62.) The Court cannot tell from the record whether Mr. Brown denied receiving only the March 2006 notice or if he also alleged that he did not receive the September 12, 2004 notice. Furthermore, the off-the-record conversation regarding representation is also relevant to the Court's analysis. Although Mr. Brown may have received some written notice of his right to counsel and was at one point represented by an attorney,[2] there is no way for the Court to assess the nature or substance of the conversation that took place with the ALJ prior to the hearing. The Court therefore cannot determine whether the conversation may have misled Mr. Brown regarding his right to representation or whether the tone of that conversation might have discouraged him from obtaining the aid of counsel. *See Clark*, 652 F.2d at 403. Although Mr. Brown is not as unsophisticated as the functionally illiterate plaintiff in *Clark*, his apparent

---

[2] The record does not reflect whether Plaintiff's prior counsel was provided by his employer, was secured by Mr. Brown on contingency, or was representing Mr. Brown *pro bono*.

8

bewilderment about the unexpected withdrawal of his attorney and the fact that he may not have found out about the withdrawal until the morning of the hearing gives the Court cause for concern as to whether his waiver was knowing and intelligent.

### b) Mr. Brown was prejudiced by his ineffective waiver.

The Court also finds that Mr. Brown was prejudiced by lack of counsel. Mr. Brown has produced specific evidence that his attorney could and would have adduced that might have altered the result of the hearing. Mr. Brown has shown ways in which absence of counsel resulted in less than a full and fair review by the ALJ.

"A claimant who does not validly waive his right to counsel must prove that he was prejudiced thereby in order to merit reversal of the ALJ's decision." *Brock v. Chater*, 84 F.3d 726, 729 n.1 (5th Cir. 1996) (citing *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir.1984)). Although a plaintiff must show that counsel "could and would have adduced evidence that might have altered the result." *Brock*, 84 F.3d at 728 (citing *Kane*, 731 F.2d at 1220), the Court is "not required to determine that the presence of counsel would *necessarily* have resulted in any specific benefits in the handling of the case before the ALJ," *Clark*, 652 F.2d at 404 (finding that a plaintiff who did not knowingly waive her right to representation was prejudiced because she did not receive a full and fair hearing by the ALJ (emphasis added)). In *Clark*, the Fifth Circuit observed, among other things, that counsel would have "aided the claimant in the matter of the hypothetical questions put to the vocational expert by the [ALJ]" and would have cross-examined the vocational expert." 652 F.2d at 406. The *Clark* court also noted that counsel would have informed Plaintiff of the need for an up to date physical examination rather than a report by a doctor made several years previously. *Id.*

Mr. Brown, now represented by counsel, has produced additional medial records that his attorney could and would have produced that might have altered the ALJ's finding of not disabled at Step Five. Mr. Brown has also shown that counsel would have aided him by supplementing the hypothetical question posed to the VE and through cross-examination of the VE.

Mr. Brown's hearing was held in November 2006. There is no evidence in the record from his treating physician regarding the symptoms arising from his Huntington's Disease after December 2003.[3] Mr. Brown, now represented by counsel, has come forward with additional medical records from treating physician Dr. Joseph Jankovic dated April 2004, May 2005, and November 2005.[4] (Pl.'s Resp. Ex. 2.) These records indicate increased chorea, i.e. involuntary movements. Mr. Brown has also produced an affidavit from Dr. Jankovic attesting to increased chorea beginning in 2004. (Pl.'s Resp. Ex. 3.) In his sworn statement, Dr. Jankovic further maintains that Mr. Brown's chorea would have interfered with his ability to perform "tasks that involved gripping, handling objects or required either fine or dexterous use of the hands and fingers more than rarely." (Id.) Dr. Jankovic affirms that he would have provided said information to the Social Security Administration at the time of Mr. Brown's hearing had he been contacted. (Id.)

The Court believes that the additional medical records and affidavit by Dr. Jankovic constitute evidence that counsel could and would have adduced in preparation for the hearing that might have changed the outcome in this case. Given that a treating physician's opinion

---

[3] Even if Mr. Brown had knowingly waived his right to counsel, the Court believes that the lack of any medical records from his treating physicians for nearly two years prior to the hearing would at least raise some doubt as to whether the ALJ fulfilled his heightened duty to explore scrupulously and conscientiously all relevant facts in a case involving an unrepresented claimant. See, e.g., Castillo, 325 F.3d at 552-53.

[4] Because Mr. Brown's last insured date is December 31, 2005, the Court considers relevant those medical records existing prior to that date.

10

often is entitled to "the greatest" or even "controlling" weight, *see Newton v. Apfel*, 209 F.3d 448, 455-56 (5th Cir. 2000), counsel would have ensured that all of Dr. Jankovic's records and opinions were before the ALJ, *see Clark*, 652 F.2d at 406. This new evidence may have led the ALJ to incorporate a limitation of involuntary hand movements into his hypothetical question to the Vocational Expert. As detailed below, such a limitation might have led to a different finding at Step Five.

The Court believes the new evidence from Dr. Jankovic might have altered the outcome of the proceedings despite the fact that the ALJ appears to have questioned Dr. Jankovic's assessments in the denial order. The Court has found little basis for the ALJ's skepticism, and is unwilling to presume that such skepticism would extend to this new evidence.

The ALJ refused to give controlling weight to the "December 2001 and March 2003 opinion" of Dr. Jankovic "indicating that the claimant would have significant limitations with work activity due to lack of coordination." (Tr. 25.) The ALJ found that these opinions were "unsupported by the objective clinical evidence, significantly contradict[] his examination, and [are] inconsistent with the evidence considered as a whole." (Tr. 25.) The ALJ also suggested that Dr. Jankovic was "leaning over backwards to support the application of disability benefits." (Tr. 26.) After scouring the record, the Court is unable to locate opinions provided by Dr. Jankovic on these dates. The Court has identified an October 1, 2001 report by Dr. Jankovic noting that Mr. Brown's "abnormal movements of the mouth, hands, and body has [sic] progressed," observing that "[t]he unusual hand movements impairs his functioning at his job he was discharged from his job [sic]," and recommending treatment. (Tr. 148-150.) At the time of that report, Mr. Brown was not taking the medication that subsequently decreased his chorea. (Tr. 150.) The Court has also identified what appear to be notes from a May 21, 2003 exam by

Dr. Jankovic indicating that Mr. Brown is "unable to work as a telephone man because he cannot climb polls [sic] due to knee problems" and again noting "mild chorea." (Tr. 144.) Another undated report from Dr. Jankovic observes, "not working 3 years (unable to climb telephone pole)" and notes "mild chorea." (Tr. 145.) The Court cannot understand how such seemingly innocuous statements could be construed as "leaning over backwards" to support Mr. Brown's disability application. To the extent that these reports suggest that Mr. Brown had involuntary hand movements, they are not obviously contradicted by Dr. Jankovic's findings that Mr. Brown had full muscle strength in both upper and lower extremities. Indeed, such findings would appear to be consistent with all of the other medical evidence in the record.[5] Furthermore, the ALJ himself recognized that Mr. Brown's limitations would preclude him from climbing telephone poles. (*See* Tr. 189 (noting restrictions of "no heights or climbing").) Thus, despite the skepticism expressed in the ALJ's decision, the Court still believes that the new evidence provided by Dr. Jankovic may have altered the outcome in this case.[6]

### i) Hypothetical Question

The new evidence from Dr. Jankovic might have affected the ALJ's formulation of the hypothetical question to the Vocational Expert (VE). When posing a hypothetical question to the VE, the ALJ asked the VE to suppose that Mr. Brown had to alternate between sitting and

---

[5] All of the doctors that evaluated Plaintiff, including an independent medical examiner, indicated that Mr. Brown suffered from Huntington's chorea. (*See, e.g.*, Tr. 164 (March 31, 2004 report by Dr. Anigbogu noting athetoid movements magnified by activity and exertion); Tr. 123 (Feb. 12, 2002 report by Dr. Pankiewicz, noting increased involuntary movements); Tr. 146 (July 26, 2002 report by Dr. Tintner noting moderate chorea in face, arms, and legs with rest). At the November 2006 hearing, Mr. Brown also testified that he had difficulty holding onto things and picking things up without dropping them. (Tr. 184, 190.) The ALJ found that Mr. Brown's subjective complaints were "somewhat exaggerated" and were actually "of only a mild to moderate degree." (Tr. 24-25.)

[6] Furthermore, even if the ALJ was entitled to refuse to give controlling weight to Dr. Jankovic's opinions under 20 C.F.R. § 404.1527(d)(2), a treating physician's opinion must still receive due weight, and often even "the greatest weight." *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000) (quoting Social Security Ruling 96-2p, 61 Fed. Reg. 34,490, 34,491 (July 2, 1996)); *see also Epps v. Harris*, 624 F.2d 1267, 1274 (5th Cir. 1980) (a physician's view is evidence "entitled to great weight."). Even if Mr. Brown had properly waived his right to counsel, the Court would have doubts as to whether the ALJ gave proper weight to Dr. Jankovic's opinions.

standing at will, could lift up to 20 pounds occasionally and/or ten pounds frequently,[7] and had the additional limitation of no heights or climbing, no moving or dangerous equipment, and the inability to work around any unstable surface. (Tr. 189.) The ALJ did not include any limitation regarding Mr. Brown's alleged involuntary hand movements. The Court finds that the ALJ may have added a limitation regarding Mr. Brown's involuntary hand movements to this hypothetical based on the new records and affidavit provided by Dr. Jankovic. This limitation may have altered the jobs identified by the VE as available to Mr. Brown and could have led to a different finding at Step Five.

Counsel also would have assisted Mr. Brown by suggesting this additional limitation be added to the hypothetical posed to the VE. Although the ALJ need only incorporate into the hypothetical questions those disabilities supported by the record and recognized by the ALJ, *see Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001), a claimant must be given the opportunity to correct deficiencies in the hypothetical question, *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). Mr. Brown was not given an obvious opportunity to correct the hypothetical posed to the VE. The ALJ did not pause during his questioning of the ALJ to allow Mr. Brown to make other suggestions nor did he provide Mr. Brown a clear opportunity to cross-examine the VE. Immediately after questioning the VE, the ALJ proceeded to ask Mr. Brown about his normal daily routine. Only later did the ALJ ask Mr. Brown if there was "anything else you want to tell me." (Tr. 190.) The timing and wording of this question did not suggest that Mr. Brown could question or cross-examine the VE. Had Mr. Brown been represented by counsel, his attorney surely would have taken the opportunity to suggest an additional limitation of involuntary hand

---

[7] Certain parts of the ALJ's hypothetical question are inaudible in the transcript. The Court refers to the ALJ's lifting limitations as indicated in the denial of benefits opinion, which appear consistent with the audible portions of the transcript. (Tr. 26.)

movements to the hypothetical question and would have ensured Mr. Brown received a full and fair hearing. *See Clark*, 652 F.2d at 406.

### ii.) Occupational Evidence and Job Titles

If the ALJ had incorporated a limitation in the use of Mr. Brown's hands based on the new evidence from Dr. Jankovic, it may have affected the VE's conclusion that Mr. Brown had work skills transferable to other occupations with jobs existing in significant numbers in the national economy. Furthermore, counsel surely would have assisted Mr. Brown in cross-examining the VE regarding the jobs she proposed as available to Mr. Brown.

In response to the ALJ's hypothetical question, the VE suggested that the jobs available to Mr. Brown included "electric meter repairer," "telephone equipment repairer," or "photo copy machine servicer."[8] There is some confusion as to which jobs the VE was referring in her testimony. Defendant suggests that the "telephone equipment repairer" job referred to by the VE is that listed as "Station Installer-and-Repairer" in § 822.261-022 of the DICTIONARY OF OCCUPATIONAL TITLES (4th ed. 1991). The description for "Station Installer and Repairer" states, however, that the job includes climbing poles and requires occasional climbing and balancing. The ALJ indicated that Mr. Brown had a restriction of "no heights or climbing" in his hypothetical question to the VE. If the VE did intend to describe the "Station Installer and Repairer" job, therefore, it would have been inconsistent with the limitations provided by the ALJ. Plaintiff's counsel could have been expected to inquire into this job description and point out the inconsistency on cross-examination of the VE.

The VE also indicated that Mr. Brown could work as a "photo copy machine servicer." Again, there is some uncertainty as to which job the VE was referring. Defendant argues that the

---

[8] The ALJ referred to these occupations by exactly the same terms in his denial of benefits. (Tr. 27.) There is no written report by the VE in the record.

14

VE intended to refer to the job of "photographic equipment maintenance technician" located at §714.281-026 of the DOT, while Plaintiff argues that this section does not mention the term "photocopy equipment." Counsel for Plaintiff surely would have sought to clarify this job title and its description at the hearing by cross-examining the VE. Furthermore, even presuming the VE was referring to the job of "photographic equipment maintenance technician" when she suggested Mr. Brown might work as a "photocopy machine servicer," this job requires "using power saws, sanders grinders and files" and "using handtools, such as drills, wrenches, reamers, and hole punches." DOT §714.281-026. Although the Court does not have the same familiarity as the ALJ with the facts of this case or with the DOT job descriptions, it believes that it is at least possible that a hand limitation would have interfered with Mr. Brown's ability to perform this work. Thus, the additional evidence provided by Dr. Jankovic may have changed the VE's opinion that this job was available to Mr. Brown.

Finally, had the ALJ included a limitation to the use of Mr. Brown's hands in the hypothetical question based on the medical records and affidavit by Dr. Jankovic, the VE may not have found that Mr. Brown was able to perform the job of "electric meter repairer." Parties agree that "electric meter repairer" appears to correspond to the job listed at §729.281.014 of the DOT. Plaintiff points out, however, that this position requires a claimant to be in the top 1/3 of the population in finger dexterity and the middle 1/3 of the population in manual dexterity. It is possible that the VE would not have found Mr. Brown able to perform this job if the hypothetical question had included a limitation to the use of Mr. Brown's hands. Again, counsel likely would have sought to raise this issue in cross-examination of the VE.

## III. CONCLUSION

Because Mr. Brown's waiver of his right to counsel was ineffective, and because he was prejudiced by lack of counsel, Plaintiff's Motion for Summary Judgment is **GRANTED**. Defendant's Motion for Summary Judgment is **DENIED**. This case is **REMANDED** to the ALJ for action not inconsistent with this order.

**IT IS SO ORDERED.**

**SIGNED** this 28th day of April, 2008.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

TO ENSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL
FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY
EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT